EXHIBIT "B"

ELECTRONICALLY FILED
Superior Court of California,
County of Tulare
09/05/2025
By: Charisma Hughes,
Deputy Clerk

Mark Reichel SBN 155034
**REICHELLAW PC**
455 Capitol Mall, Suite 802
Sacramento, CA 95814
Telephone: 916.548.7398
Facsimile: 888.505.9331
mark@reichellaw.com (e-service accepted)

Attorney for Plaintiff GRICELDA OLIVERA

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF TULARE

| | |
|---|---|
| GRICELDA OLIVERA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF VISALIA, a public entity; CITY OF VISALIA DEPARTMENT, a public entity; JASON SALAZAR in his capacity as City Of Visalia Police Department Chief Of Police; OFFICER ALLEN SANCHEZ HEREDIA; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No: VCU318832**<br><br>**FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH**<br><br>1) Individual Liability/Violation of Substantive Due Process Rights (Actionable under 42 U.S.C. §1983)<br><br>2) Negligence-Violation of Mandatory Duty(Actionable under Government Code §815.2 et. seq.)<br><br>3) Negligence-Special Relationship (Actionable under Government Code §815.2 et. seq.)<br><br>4) Negligent Supervision (Actionable under Government Code §815.2 et. seq.)<br><br>**Initial Complaint Filed: March 3, 2025** |

Plaintiff complains and alleges as follows:

### I.   INTRODUCTION

1) On January 21, 2024 at approximately 2:50 p.m., Arturo Barajas Jr. (hereinafter "decedent" of "Arturo") died as a result of a self-inflicted gunshot wound to his head. Arturo committed suicide despite a Temporary Emergency Gun Violence Restraining Order (TEGVRO) secured by Officer Allen Sanchez Heredia (hereinafter "Heredia" or "Officer Heredia"). No one ever served the TEGVRO.

2) Heredia and DOE 1 determined that there was reasonable cause to believe that Arturo posed an immediate and present danger of causing personal injury to himself or others by having custody and control of two firearms he was known to have in his possession. Arturo used one of the two firearms to kill himself.

3) On January 19, 2024 at approximately 8:10 p.m., Ms. Olivera, a Spanish speaking person, called 911. Crying, frightened, and panicked, she said that her son was suicidal and homicidal, suffered from schizophrenia, he heard voices in his head telling him to kill people, that he would shoot the police if they tried to arrest him, possessed and had access to two firearms, had been arrested for firearm possession in Sacramento, she could no longer live with Arturo's unpredictable nature, and wanted the police to come and take the guns away (Call Notes).

4) At approximately 8:24 p.m., dispatch assigned Officer Heredia to call Ms. Olivera. Before contacting Ms. Olivera, Officer Heredia reviewed the call notes. Officer Heredia told Ms. Olivera that he needed to and would get a judge's order to take the guns away.

5) Later on, January 19, 2024 at approximately 8:45 p.m., Heredia advised the graveyard Sargent, sued herein as Doe 1, about the details of the Ms. Olivera's call regarding Arturo. Doe 1 told Heredia to reach out to a judge to secure a TEGVRO.

6) On January 19, 2024 at 9:34 p.m., about 45 minutes after speaking with Doe 1 and within one hour after speaking with Ms. Olivera, Officer Heredia secured a TEGVRO signed by Judge Bratsch. Officer Heredia then called Ms. Olivera. He told her that the judge had signed the order. Ms. Olivera expressed that she wanted the police to get the guns and provide Arturo with proper medical attention.

7) At about 9:34 p.m. on January 19, 2024, Heredia advised Doe 1 that Judge Bratsch signed the TEGVRO. Doe 1 agreed to draft a search warrant to help seize the firearms.

8) At 1:28 a.m. on January 20, 2024, Judge Bratsch signed the warrant.

9) On January 21, 2024 at 2:51 p.m., 41 hours after securing the TEGVRO and

37 hours after getting the warrant, Arturo shot himself in the head with one of the two firearms he possessed and dies. Officer Heredia and no other officers with the Visalia Police Department (hereinafter "VPD") ever served the TEGVRO or seized the firearms.

10) The timeline of events reveals that the Defendants' conduct and actions rendered the TEGVRO statutory scheme a nullity to the point that it shocks the conscious and evidences a deliberate indifference to the known and obvious danger posed by Arturo. Arturo's death was preventable but for Defendants' breaches of duty, as hereinafter alleged, owed to him and his surviving mother, Plaintiff Gricelda Olivera (hereinafter "Plaintiff" or "Ms. Olivera")

## II. JURISDICTION AND VENUE

11) This Court has jurisdiction over the present matter because, as delineated within this First Amended Complaint, the nature of the claims and the amount in controversy meet the requirements for jurisdiction in the Superior Court of the State of California.

12) Venue is proper in this Court under Section 395(a) of the California Code of Civil Procedure because all incidents, events, and occurrences giving rise to this action occurred in the County of Tulare California, and because Defendants reside in the County of Sacramento, California.

## III. THE PARTIES

13) Plaintiff Ms. Olivera is presently an individual residing in the County of Sacramento, State of California. On the dates and times of Defendants' conduct, acts, and omissions she was an individual residing in the County of Tulare, State of California. Ms. Olivera is the natural mother of Arturo. Arturo died intestate without a surviving spouse, domestic partner, issue, or issue of predeceased children. Ms. Olivera, as the sole surviving parent who would be entitled to the property of the decedent by intestate succession, brings this action pursuant to Probate Code §6402 and Code of Civil Procedure §377.60.

14) At all relevant times, Defendant CITY OF VISALIA (hereinafter "Visalia" or "City") is a public entity within the definition of California Government Code § 811.2.

Pursuant to California Government Code § 945, public entities are subject to suit. Defendant Visalia operates and manages the VPD.

15) JASON SALAZAR was employed as the VPD Chief of Police since approximately 2014 through the present time. At all relevant times, he was a duly licensed law enforcement officer and acting in the course and scope of that employment and under color of state law.

16) Officer Heredia was employed by the VPD as a duly licensed law enforcement officer. At all relevant times, he was acting in the course and scope of that employment and under color of state law.

17) On information and belief, DOE 1 was employed by the VPD as a sergeant. At all relevant times, on January 19, 2024 and January 20, 2024 he was the graveyard shift sergeant who was responsible for supervising VPD Officers, including but not limited to Heredia. On information and belief, DOE 1 was supervising, directing, and instructing Heredia with respect to the procedures to be followed regarding the TEGVRO alleged herein. At all relevant times, DOE 1 was acting in the course and scope of his employment with VPD and under color of state law.

18) The true names of defendants DOES 2 through 50, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

### IV.  COMPLIANCE WITH GOVERNMENT TORT CLAIM PROCEDURES

19) On or about July 22, 2024, Plaintiff presented a claim for damages to VISALIA. On or about September 16, 2024, VISALIA provided notice to Plaintiff that as of September 16, 2024 her claim had been rejected by operation of law.

### V.  FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

#### Background Information

20) Prior to January 1, 2016, California did not have a statutory framework for a

Gun Violence Restraining Order System. In 2014, a Bill was introduced to establish a Gun Violence Restraining Order System in California. (2014 Cal AB 1014, 2014 Cal Stats. ch. 872) The author of the Bill observed that there was no mechanism for law enforcement to confiscate firearms from a person who is a danger to themselves or others. "When a law enforcement officer encounters a person who appears to be a danger to himself, herself, or others, current law provides three options: take the person to a mental health facility for an evaluation of whether he or she is a danger to self or others because of a mental disorder (W&I Code, Sec. 5150); conduct a criminal investigation; assess the appropriateness of a domestic violence protective order (only protects certain relationships, including spouse, former spouse, domestic partner, child, etc.). The author referred to "The recent shootings in Santa Barbara, after the parents of the disturbed young man desperately tried but failed to get help before their son's killing spree, provide a tragic example of how options are limited for families in crisis."

21) In 2014, the Legislature passed, and the Governor approved the Gun Violence Restraining Order statutory framework which became effective January 1, 2016. (Penal Code §§18100 et. seq.)

22) The statutory scheme provides for the following three types of GVROs: A temporary emergency GVRO (TEGVRO), an Ex parte GVRO, and a GVRO issued after notice and hearing.

23) Each GVRO is designed to address a different risk of gun violence. A TEGVRO can only be issued "…if a law enforcement officer asserts and a judicial officer finds that there is reasonable cause to believe that a person poses **an immediate and present danger** of causing personal injury to himself, herself, or others…" by having custody and control of firearms. (Emphasis added). An Ex parte GVRO may be requested by an immediate family member or a law enforcement officer upon a showing that "…there **is a substantial likelihood that the person will, in the near future**, cause personal injury to himself/herself or another by…" having possession of a firearm. (Emphasis added) Finally, a GVRO after notice and hearing may be requested by an immediate family

member or a law enforcement officer upon a showing of clear and convincing evidence "*...that there is a substantial likelihood that the person poses a significant danger of personal injury to himself/herself or others by having...*" possession of a firearm.

24) For TEGVROs, a court must designate at least one judge to be reasonably available at all times. With certain conditions, a law enforcement officer can orally request a TEGVRO. For an Ex parte GVRO, the GVRO must be issued or denied on the same day the petition is submitted to the court or no later than the next day of judicial circumstances under specified circumstances.

25) AB 1014 also amended Penal Code §1524 to allow a search warrant to be issued when the property or things to be seized are firearms or ammunition or both that are in the possession of a person who is the subject of a gun violence restraining if the person has been lawfully served with that order.

26) In 2019, the Legislature amended the statutory framework for GVRO. The arguments in support of the amendment included ""Although the GVRO law has now been in effect for over three years, it is evident that many law enforcement agencies either do not know about the law, do not understand how it can fill gaps in existing law, or do not have a process for implementing the law in their jurisdiction." GVRO data provided by the California Department of Justice showed that: many counties had never issued a TEGVRO, use of the law had been uneven among counties, and the law had been under used compared to rates in other states. "Clearly, law enforcement officers in California need education, training and procedures on the GVRO law so that its potential life-saving benefits can be fully realized." According to the author, "Gun violence unfortunately continues to be an issue across California, with no community immune to the impacts. We are sadly reminded of the lethality of firearms in the hands of dangerous individuals when we regularly read of mass shootings in the newspaper, or worse experience them in our own community. "While it is not always the case, many individuals who commit acts of gun violence have had contact with law enforcement in the past. Ensuring that officers understand the tools at their disposal, especially Gun Violence Restraining Orders, when

1 | interacting with an individual who may have not committed a crime, but is dangerous, has
2 | the potential to provide us all with a safer future."

3 |     27) To achieve the purpose of the legislation, the legislature enacted §18108. That section provides "Each municipal police department…shall, on or before January 1, 2021, develop, adopt, and implement written policies and standards relating to gun violence restraining orders. The policies and standards shall be updated, as necessary, to incorporate changes in the law governing gun violence restraining orders."

    28) Subsection (c) states that the law enforcement agency shall have written standards and procedures for, among other things, requesting and serving a temporary emergency gun violence restraining order, the seizure of firearms and ammunition **at the time of issuance** of a temporary emergency gun violence restraining order. and obtaining and serving a search warrant for firearms and ammunition.

### TEGVRO Secured by Officer Heredia

    29) On January 19, 2024, Arturo was 19 years old. He lived with his mother at 704 N. Atwood Street in Visalia. On January 19, 2024 at approximately 8:10 p.m. Ms. Olivera called 911. She spoke with a 911 dispatcher through a Spanish interpreter for approximately 7 minutes from 8:10 p.m. to 8:17 p.m. The call notes reflect that Ms. Olivera was continually talking and crying over the interpreter. On the 911 call, Ms. Olivera expressed, through the interpreter, that Arturo had walked away from the house, she was afraid of him because he had 2 firearms, suffered from a mental illness, had been acting crazily, yelling, screaming, and and hitting walls, She was also afraid that Arturo would shoot the police if they came to the house. Ms. Olivera wanted a police officer to call her.

    30) On January 19, 2024 at approx. 8:24 p.m., dispatch assigned Heredia to call Ms. Olivera. Officer Heredia reviewed the dispatch notes before calling Ms. Olivera. Heredia spoke with Ms. Olivera using his department cell phone. As Ms. Olivera was speaking with Heredia, she was crying and in a panic. She told Heredia, *inter alia*, that Arturo had two firearms he had brought with him when he moved to Visalia from Sacramento, a long black rifle and a silver handgun; She had personally seen the firearms

in Arturo's bedroom; Arturo had been arrested in Sacramento for unlawful firearm possession; Arturo had been diagnosed with schizophrenia in 2022; Arturo heard voices in his head that wanted him to kill people; Arturo said that he would shoot police officers if they came to arrest him; and that Arturo repeatedly threatened to commit suicide.

31) Heredia told Ms. Olivera that an order signed by a judge was needed for the police to be able to take the firearms away. After the phone call on January 19, 2024 at approximately 8:45 p.m., Officer Heredia spoke with DOE 1 about the details of the call with Ms. Olivera regarding Arturo. DOE 1 told Heredia to reach out to a judge to secure a TEGVRO

32) Heredia filled out and completed a TEGVRO form for the firearms described by Ms. Olivera. Officer Heredia contacted the Honorable Judge Bratsch who approved the TEGVRO at 9:34 p.m. on January 19, 2024.

33) On January 19, 2024, after getting the TEGVRO, Heredia called Ms. Olivera to let her know that the judge signed the TEGVRO. He told her that the VPD will be coming to take the guns away. Ms. Olivera reiterated to Heredia that she wanted the police to take away the firearms and to have Arturo get the medical attention he needed. That was the last time Ms. Olivera heard from Heredia or anyone from the VPD until she called 911 just before Arturo committed suicide on January 21, 2024 at 2:50 p.m.

34) In response to Ms. Olivera's report made to Heredia on January 19, 2024 about Arturo's homicidal and suicidal threats, plans to act on his threats, his psychiatric condition, possession of firearms, and the terror she was experiencing, Heredia, at the direction of DOE 1, urgently and rapidly sought and secured an TEGVRO thereby authorizing and allowing the VPD to confiscate Arturo's firearms.

35) No later than 8:45 p.m. on January 19, 2024, Heredia, DOE 1, and DOES 2-50, knew and/or had reason to know that Plaintiff and Arturo were facing an immediate and present danger of serious bodily injury or death.

36) No later than 8:45 p.m. on January 19, 2024, Heredia, DOE 1, and DOES 2-50, knew and/or had reason to know that Plaintiff and Arturo were facing an immediate

and present danger of a life and death situation such that time was of the essence for law enforcement to act and intervene.

37) No later than 8:45 p.m. on January 19, 2024, Heredia, DOE 1, and DOES 2-50 knew and/or had reason to know that any delay in serving the TEGVRO would result in an increased risk that Arturo would carry out his homicidal and suicidal threats.

38) Heredia told Ms. Olivera that he would take emergency action to get an order from a judge to take away the firearms possessed by her son. Heredia did take emergency action to secure and did secure an emergency order from a judge to take away the firearms from Ms. Olivera's son. Heredia confirmed to Ms. Olivera that he did take emergency action to take away her son's guns and get an order from a judge to take away the firearms possessed by her son. These statements and actions constituted overt acts by Heredia that assured Ms. Olivera that Heredia would take away her son's firearms and/or constituted an express and/or implied promise that the Heredia would take emergency steps to take Arturo's firearms, and/or constituted an express and/or implied promise that the Heredia would, at a minimum, communicate and/or coordinate with MS. OLIVERA regarding serving the TEGVRO and taking the firearms away.

39) In reliance on the emergency acts, assurances, and promises undertaken and made by Heredia alleged above, Ms. Olivera waited for Heredia to take away Arturo's firearms, to communicate with her about the TEGVRO, and/or to coordinate with the her about serving the TEGVRO.

40) No later than 8:45 p.m. on January 19, 2024, Heredia, DOE 1, and DOES 2-50, knew and/or had reason to know that the longer they delayed in serving the TEGVRO, the greater the risk that Arturo would carry out his homicidal and suicidal threats.

41) At all relevant times after securing the TEGVRO, Arturo was easily locatable and available for service of the TEGVRO, seizure of his firearms, and service and effectuation of the search warrant.

42) The intent and purpose of a TEGVRO includes securing and serving it in a manner consistent with the immediate and present danger posed by a person that is the

subject of the TEGVRO such as and including Arturo. The intent and purpose of a TEGVRO is such that the risk of personal injury to the subject of the TEGVRO and others increases with delays in securing and serving it. Heredia's actions in never serving the TEGVRO in the 41 hours after securing the TEGVRO substantially increased the risk of personal injury to Arturo and others.

43) Heredia's actions, express and/or implied assurances, and/or promises alleged above created a special relationship between Plaintiff and Heredia and DOES 2-50 such that said Defendants owed Plaintiff a duty to exercise due care in serving the TEGVRO, protecting Plaintiff and Arturo, and confiscating the firearms.

44) After Heredia told DOE 1 that Judge Bratsch had signed the TEGVRO. DOE 1 took responsibility to draft and did draft a search warrant that DOE 1 believed was necessary to allow the officers to serve the TEGVRO and confiscate the firearms. to search Arturo's bedroom. On January 20, 2024 at approximately 1:28 a.m. Judge Bratsch signed the search warrant.

45) On January 21, 2024 at approximately 2:50 p.m., Ms. Olivera called 911 for the VPD to respond. She said that Arturo had left the home and had at least one firearm with him. While on the phone, she said that Arturo came back. She locked him out of the house because he was threatening and scaring her. She also said that Arturo was threatening to kill himself. Also, while on the phone, Ms. Olivera said that Arturo left the house again and was walking south on Atwood Street.

46) On January 21, 2024 at approximately 2:50 p.m., VPD responded Rapid Code-3 to the area. On January 21, 2024 at approximately 2:51 p.m., Arturo shot himself in the head on the sidewalk adjacent to Willow Glen Park.

47) The VPD served the search warrant only after Arturo killed himself.

### No Written Standards and Procedures for TEGVROS as Mandated by §18108

48) VPD policy 342 in effect on January 1, 2021 regarding Gun Violence Restraining Orders did not include written standards and procedures specifically for

serving a TEGVRO, the seizure of firearms and ammunition at the time of issuance of a TEGVRO and obtaining and serving a TEGVRO search warrant for firearms and ammunition.

49) VPD policy 343, adopted in July 2022, was the policy in effect on January 19, 2024. Policy 343 did not include written standards and procedures specifically for serving a TEGVRO, the seizure of firearms and ammunition at the time of issuance of a TEGVRO and obtaining and serving a TEGVRO search warrant for firearms and ammunition.

50) On, before, and after January 19, 2024, the VPD did not have written standards and procedures specifically for TEGVROs as required and mandated by §18108. At best, VPD written standards and procedures for securing and serving GVROS did not differentiate between a TEGVRO, an Ex parte GVRO, and a GVRO after notice and hearing. The statutory scheme creates the three (3) types of GVROs based on the immediacy, urgency, and nature of the risk posed by the person subject to the GVRO. The immediacy, urgency, and nature of the risk posed by the person subject to the GVRO necessarily require materially different written standards and procedures for securing, serving, and seizing firearms and ammunition under each type of GVRO. The written standards and procedures for securing and serving an Ex parte GVRO or a GVRO after notice and hearing cannot be used for a TEGVRO without nullifying the Legislative intent of the GVRO statutory scheme.

51) A local police department, such as and including the VPD, that does not have written standards and procedures specifically for TEGVROs creates the risk that TEGVROs will not be served in a manner consistent with the immediate and present danger posed by the person subject to the TEGVRO. The reason the TEGVRO secured by Heredia for Arturo was not served before Arturo shot and killed himself, 41 hours after Heredia secured the TEGVRO, was the fact that the VPD used the same written standards and procedures for TEGVROs, Ex parte GVROs, and GVROs after notice and hearing. By not having written standards and procedures specifically for TEGVROs, the VPD rendered

the GVRO statutory requirements and scheme a nullity.

## Breach of Legal Duties

52) California law, including Penal Code §18108, creates a duty by the Defendants to have written standards and procedures for, among other things, requesting and serving a temporary emergency gun violence restraining order, requesting and serving an ex parte gun violence restraining order, requesting and serving a gun violence restraining order issued after notice and hearing, the seizure of firearms and ammunition at the time of issuance of a temporary emergency gun violence restraining order, and obtaining and serving a search warrant for firearms and ammunition. Defendants did not have, never had, and still does not have written standards and procedures for serving a TEGVRO, the seizure of firearms and ammunition at the time of issuance of a TEGVRO, and/or serving a search warrant for firearms and ammunition under a TEGVRO. The VPD did not serve the TEGVRO, seize the firearms and ammunition upon issuance of the TEGVRO, and/or serve the warrant before Arturo used one of the guns identified in the TEGVRO to kill himself a shocking 41 hours after securing the TEGVRO. Furthermore, Salazar as the Chief of Police was the person responsible in the VPD for ensuring that the VPD's the written standards and procedures related to GVROs met and complied with the state mandated and required written standards and procedures. By allowing, approving, and/or ratifying the VPD not having written standards and procedures for TEGVROs and/or using the same written standards and procedures for TEGVROs, Ex parte GVROs, and GVROs after notice and hearing, the VPD and/or Salazar breached their duty.

53) California law and federal civil rights law create a duty by the Defendants to take steps and action to prevent harm when Defendants have caused a situation that could lead to an individual's harm. Defendant's created such a dangerous condition by using the same standards and procedures for TEGVROs, Ex parte GVROs, and GVROs after notice and hearing and failed to take steps and action, the lack of which led to Arturo's death.

## Damages

54) Plaintiff has suffered economic and noneconomic damages. Plaintiff's

economic damages may include, but are not limited to, the financial support that her son would have contributed to the family during his life expectancy and/or Plaintiff's life expectancy, the loss of gifts or benefits that Plaintiff could have received from her son, funeral and burial expenses, and the reasonable value of household services that her son would have provided. Plaintiff's noneconomic damages may include, but are not limited to, her loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## VI.    CAUSES OF ACTION

**First Cause of Action**
**Individual Liability/Violation of Substantive Due Process Rights**
**(Actionable under 42 U.S.C. §1983)**
*(Against Defendants Salazar and Does 2 through 50, inclusive)*

55) Plaintiff hereby incorporates each and every preceding allegation into this Cause of Action as if expressly alleged herein.

56) The aforementioned acts of defendant Chief Salazar, as alleged herein, including but not limited to, allowing, authorizing, and/or ratifying the lack of written standards and procedures for TEGVROs and/or use of the same written standards and procedures for service and seizure of firearms under TEGVROs, Ex parte GVROs, and GVROs after notice and hearing created a danger that would not have existed without defendant's affirmative acts.

57) In engaging in said acts, defendant acted with deliberate indifference to the foreseeable harm and danger that Arturo and plaintiff would face and with deliberate indifference to Arturo's and plaintiff's constitutional rights, including but not limited to substantive due process as protected by the Fourteenth Amendment of the U.S. Constitution.

58) As a direct and proximate result of the aforementioned actions of said defendant, plaintiff's son died by suicide causing plaintiff to suffer wrongful death damages as allowed by law and according to proof.

Wherefore Plaintiff Prays For Relief And Judgement As Hereinafter Set Forth.

## Second Cause of Action
### Negligence-Violation of Mandatory Duty
(Actionable under Government Code §815.2 et. seq.)
*(Against Defendants Visalia, VPD, and Does 2 through 50, inclusive)*

59) Plaintiff hereby incorporates each and every preceding allegation into this Cause of Action as if expressly alleged herein.

60) Defendants Visalia and VPD, through their agents and employees, owed plaintiff and the general public a duty of care to ensure that its law enforcement has, and had at all relevant times, written standards and procedures for serving TEGVROs, seizing firearms and ammunition upon issuance of the TEGVRO, and obtaining and serving a search warrant for firearms and ammunition under a TEGVRO.

61) This duty is intended to achieve the purposes for a TEGVRO in protecting the person subject of the TEGVRO and others by establishing written procedures and standards for law enforcement officers to follow to avoid delays, such as the unconscionable 41 hours that lapsed in this case, that are inconsistent with the immediate and present danger posed by the person that is the subject of the TEGVRO, such as and including Arturo.

62) Defendants breached the duty of care owed to Arturo and plaintiff by engaging in the acts and/or omissions alleged above including, but not limited to, having written standards and procedures for securing, serving, and seizing the firearms GVROs that do not differentiate between a TEGVRO, an Ex parte GVRO, and a GVRO after notice and hearing and/or not having written procedures and standards for TEGVROs at all.

63) Said breach of care led to Arturo's death and plaintiff suffering the wrongful death of her son which proximately caused the injuries and damages alleged herein

Wherefore Plaintiff Prays For Relief And Judgement As Hereinafter Set Forth.

## Third Cause of Action
### Negligence-Special Relationship
(Actionable under Government Code §815.2 et. seq.)
*(Against Defendants Visalia, VPD, Officer Heredia and Does 2 through 50, inclusive)*

64) Plaintiff hereby incorporates each and every preceding allegation into this Cause of Action as if expressly alleged herein.

65) The aforementioned acts of defendant Heredia as alleged herein including,

but not limited to, communicating to plaintiff that he secured a court order to confiscate her son's firearms on an urgent and immediate basis but not serving the TEGVRO before Arturo shot himself, a bewildering 41 hours after securing the TEGVRO and communicating to plaintiff that he would confiscate her son's firearms on an urgent and immediate basis.

66) In engaging is said acts, defendants owed plaintiff a duty of care arising out of a special relationship.

67) Defendants breached said duty. As a direct and proximate result of said breach, plaintiff suffered damages as alleged herein.

68) Defendants Visalia and VPD are liable for the conduct of defendant Heredia as he was acting under the law and within the course and scope of his employment or agency with defendant VPD.

Wherefore Plaintiff Prays For Relief And Judgement As Hereinafter Set Forth.

**Fourth Cause of Action**
**Negligent Supervision**
**(Actionable under Government Code §815.2 et. seq.)**
*(Against Defendants Visalia, VPD, Salazar, Doe 1, and Does 2 through 50, inclusive)*

69) Plaintiff hereby incorporates each and every preceding allegation into this Cause of Action as if expressly alleged herein

70) Defendants owed Arturo and plaintiff a duty of care to supervise law enforcement personnel in such a manner to comply with the law and ensure that the acts and/or omissions alleged herein did not occur.

71) The aforementioned acts of defendants Visalia, VPD, Salazar, and Doe1, as alleged herein, including but not limited to, failing to supervise Heredia and other officers related to the standards and procedures required and mandated by state law, including but not limited to, service of TEGVROs, seizure of the firearms and ammunition when the TEGVRO is issued, and serving a search warrant under the TEGVRO.

72) As a direct and proximate result of said breach, plaintiff suffered damages as alleged herein.

73) Defendants Visalia and VPD are liable for the conduct of defendants Salazar

1  and Doe 1 as they were acting under the law and within the course and scope of their
2  employment or agency with defendant VPD.
3      WHEREFORE Plaintiff GRICELDA OLIVERA prays for judgment against
4  Defendants as follows:
5      a. For compensatory damages, including all economic and non-economic
6         damages, against all Defendants, jointly and severally according to
7         proof at trial.
8      b. For reasonable attorney fees pursuant to 42 U.S.C. §1983 and as
9         otherwise authorized by statute or law.
10     c. Award costs of suit as allowed by law.
11     d. Such other and further relief as this Court may deem just and proper.

13 DATED: 9/5/2025

Respectfully Submitted,
REICHELLAW PC

By _____
MARK REICHEL
Attorney for Plaintiff

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: MARK REICHEL   155034 | |
| FIRM NAME: REICHELLAW PC | |
| STREET ADDRESS: 455 Capitol Mall, Suite 802 | |
| CITY: Sacramento  STATE: CA  ZIP CODE: 95814 | |
| TELEPHONE NO.: 916.801.2314  FAX NO.: 888.505.9331 | |
| E-MAIL ADDRESS: mark@reichellaw.com | |
| ATTORNEY FOR (name): GRICELDA OLIVERA | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF TULARE
STREET ADDRESS: 221 S. MOONEY BLVD, RM 201
MAILING ADDRESS:
CITY AND ZIP CODE: VISALIA, 93291
BRANCH NAME:

PLAINTIFF/PETITIONER: GRICELDA OLIVERA
DEFENDANT/RESPONDENT: CITY OF VISALIA et. a.

**PROOF OF ELECTRONIC SERVICE**

CASE NUMBER: VCU318832
JUDICIAL OFFICER:
DEPARTMENT:

1. I am at least 18 years old.
   a. My residence or business address is (specify):
      455 Capitol Mall, Suite 802, Sacramento, CA 95814
   b. My electronic service address is (specify):
      doug@reichellaw.com

2. I electronically served the following documents (exact titles):
   First Amended Complaint

   ☐ The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: Leonard Herr
      On behalf of (name or names of parties represented, if person served is an attorney):
      City of Visalia, City of Visalia Police Department, Officer Heredia
   b. Electronic service address of person served:
      lherr@hpblaw.net On (date):9/25/2025 at approx 5:30 p.m.
   c.
      ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment. (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date:9/5/2025

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DOUGLAS STEIN

(TYPE OR PRINT NAME OF DECLARANT)    (SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
(Proof of Service/Electronic Filing and Service)

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.  [Print this form]  [Save this form]  [Clear this form]